PEOPLE *v.* DI PIETRO.

1. RECEIVING STOLEN GOODS — AUTOMOBILES — CRIMINAL LAW—
   GUILTY KNOWLEDGE—EVIDENCE—ADMISSIBILITY.
   In a prosecution for receiving a stolen automobile, evi-
   dence of sales of other stolen cars by defendant, while
   inadmissible for the purpose of establishing the guilt of
   defendant of the crime charged, was admissible, under
   an exception to this rule, to show that the having by
   defendant of the car in question was not a mistake, an
   innocent business transaction, but part of a scheme or

---

On evidence of other crimes in prosecution for receiving stolen
property, see note in 62 L. R. A. 269.

plan of having and dealing in stolen cars, and to show guilty knowledge, and where the jury were properly instructed as to the purpose, there was no error in receiving it.

2. SAME—EVIDENCE—CANCELLED CHECK—GUILTY KNOWLEDGE.
   Where there was evidence of defendant's dealing in automobiles with a certain individual, and in view of the question of defendant's guilty knowledge, a check claimed to have been given said person as payee by defendant in payment for a car, introduced by defendant's attorney on cross-examination of one of the witnesses for the prosecution, was properly received in evidence when it was offered later by the prosecution, and also rebuttal testimony from the prosecution showing that the name of an indorser thereon had been erased after it had passed through the bank; the payee therein named not having been found.

3. SAME—APPEAL AND ERROR—ADMISSION OF EVIDENCE—MISCARRIAGE OF JUSTICE—STATUTES.
   While the testimony of the owner of a stolen car that defendant had sold that on the day his car was stolen it was parked on a street in Detroit, and when he left his car defendant and others were seated in an adjacent car and upon his return both cars were gone, was inadmissible for any purpose, yet where the trial judge carefully instructed the jury to disregard it, and it cannot be said, upon the whole record, that defendant's conviction was a miscarriage of justice under 3 Comp. Laws 1915, § 14565, the conviction will not be set aside because of such testimony.

Error to Oakland; Covert (Frank L.), J. Submitted April 15, 1921. (Docket No. 128.) Decided June 6, 1921.

Carmelo V. Di Pietro was convicted of receiving stolen property, and sentenced to imprisonment for not less than 1 nor more than 5 years in the State prison at Jackson. Affirmed.

*Charles S. Matthews*, for appellant.

A. *Floyd Blakeslee*, Prosecuting Attorney, and *Glenn C. Gillespie*, Special Prosecuting Attorney, for the people.

CLARK, J. The information charged defendant with larceny of an automobile and in a second count that he received it knowing it to be stolen. During the trial the first count was abandoned. Defendant was convicted. During three months in the spring of 1920 defendant conducted a garage in Birmingham and was a dealer in used cars. The complaining witness, Rosseau, owned a car which was stolen from him in Detroit on May 2d of that year. About a month later he saw the car on a street in Detroit. Kroschinsky claimed to be the owner, having purchased it from the defendant May 28th. Kroschinsky returned the car to Rosseau and went to Birmingham to see defendant. The garage had been sold. Defendant was en route to Italy. A warrant was issued. His arrest in New York followed.

Kroschinsky testified that when he purchased the car he asked defendant as to the license plates and was told that there were none and that the car was a demonstrating car which he himself had been using. Plumstead was defendant's bookkeeper at the garage and testified that the books showed nothing as to purchase and payment of this car. This, he said, was true of other cars sold by defendant. He further testified of his unsuccessful efforts to get from defendant information for the purpose of proper bookkeeping as to purchase and cost of these cars. Over defendant's objection evidence was admitted showing the sale by him of three other stolen cars. On May 5th he sold to McKinley a car which had been stolen on March 29th. On May 17th he sold to Mason a car which had been stolen in Detroit. On May 24th

he sold to Peabody a car which had been stolen April 27th.  Warner, defendant's salesman, testified that defendant told him that the McKinley car had been bought from a lady who lived near Monroe.  Defendant told Peabody that the car sold to him had been purchased in Toledo, nearly a new car, bought as a service car.  He told Mason that the former owner of the car sold to him had disposed of it because he had purchased a new sedan.

Cobb was cashier of the bank in Birmingham with which defendant had an account.  When defendant was arrested in New York he gave a friend written instructions from which we quote:

"Tell Bill Warner and Chuck Plumstead not to disclose the amount of cars sold or to whom they were sold.

"Tell Cobb not to disclose any of cars sold on time so there would not be any more delay."

Defendant claimed to have purchased the car in question from Michals whom he had known and from whom he claimed to have bought other cars; that the car was purchased at the garage of the Modern Sales Company in Detroit; that he received from Michals the claim check for the car which he surrendered to the said company and received the car.  The claim check when surrendered was stamped "Paid."  It was produced by defendant.  The people had testimony that the number and name of the car had been written on the claim check over the stamp and that erasures had been made.  Defendant's counsel, during the cross-examination of Plumstead, to show defendant's dealing with Michals, produced a check by defendant, afterwards offered in evidence by the prosecution and received, dated April 15th, 1920, payable to Michals for $600, indorsed by Michals.  Another later indorsement had been erased.  The check after having been paid was returned by the bank to the defendant.

An officer of the bank called by the people in re-
buttal testified that when the check was paid it bore
the indorsement of Michals and also of one Castillon.
The prosecution offered testimony tending to connect
Castillon with the theft of certain automobiles but
the offer was refused.

Halliday, the owner of the car sold by defendant
to Peabody, was permitted to testify that on the day
his car was stolen it was parked on a street in Detroit,
that when he left his car defendant and others were
seated in an adjacent car and upon his return both
cars were gone.   This testimony was later stricken out
and the jury was instructed to disregard it.

1. Defendant insists that the testimony as to the
sale of cars other than the one in question was inad-
missible.    Evidence of another independent crime
could not be admitted to establish the guilt of defend-
ant of the crime charged.    But the evidence was ad-
duced under an exception to this general rule to show
that the having by defendant of the car in question
was not mistake, an innocent business transaction,
but a part of a scheme or plan of having and dealing
in stolen cars, and to show guilty knowledge.    The
jury was instructed of the purpose of receiving this
testimony and it was not error under the circum-
stances to receive it.    In a recent case where this
exception was fully considered and the authorities
reviewed, *People* v. *Rice*, 206 Mich. 644, it is said:

> "The underlying reason for the exception lies in
> the fact that a man may be honestly mistaken, have no
> fraudulent intent if the transaction stands alone, is
> single; but that the probabilities of an honest mis-
> take diminish as the number of similar transactions
> indicating a scheme or system increases.    Thus a
> man may honestly offer a counterfeit bill, and
> the one transaction standing alone has little force in
> proving guilty knowledge, in proving intent to de-
> fraud.    But if he successively offers 5 or 25 counter-

feit bills, as such offers increase in number the probabilities of an honest mistake diminish, and the probabilities of guilty knowledge, of intent to cheat, increase. As was said by Lord Coleridge in *Reg.* v. *Francis*, 12 Cox Cr. Cas. 612:

> " 'It seems clear upon principle that, when the fact of the prisoner having done the thing charged is proved, and the only remaining question is whether, at the time he did it, he had guilty knowledge of the quality of his act, or acted under a mistake, evidence of the class received must be admissible. It tends to show that he has been pursuing a course of similar acts, and thereby it raises a presumption that he was not acting under a mistake. It is not conclusive; for a man may be many times under a similar mistake or may be many times the dupe of another. But it is less likely he should be so oftener than once, and every circumstance which shows that he was not under a mistake on any one of these occasions strengthens the presumption that he was not on the last.' "

2. Receiving the check for $600 in evidence is said to be error. It was produced and used by defendant in the cross-examination of the witness Plumstead. Defendant claimed to have bought the car in question from the payee of the check. It was not shown to have been in payment of the car in question. But for the erasure of the name of the last indorser the check had little significance in the case. Michals was not found. Defendant denied knowledge of the erasure which must have occurred after the check had passed through the bank. Under the evidence as to dealing in cars between defendant and Michals and because of the question of the guilty knowledge of the defendant, it was not error to receive the check in evidence. Nor do we think it was error to receive from the prosecution rebuttal testimony respecting the erasure.

3. Receiving the testimony of the witness Halliday, above mentioned, was unfortunate and we think the testimony was incompetent for any purpose. The trial

judge very carefully instructed the jury to disregard it. The defendant insists that the error could not be cured by such instruction. But we have read the record with care. We have heard the earnest arguments of counsel. The case is well briefed. We think the verdict just and that the conviction was not a miscarriage of justice. Entertaining this view, under the statute (3 Comp. Laws 1915, § 14565; and *People* v. *Smolkiewicz*, 206 Mich. 1; *People* v. *Mandell*, 209 Mich. 154), the conviction will not be set aside because of the admission of such testimony.

We find no reversible error.

Affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.